IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **PHILLIP NEAL SEGO,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**VISION SOLAR LLC**, a Pennsylvania limited liability company,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Phillip Neal Sego ("Plaintiff" or "Sego") brings this Class Action Complaint and Demand for Jury Trial against Defendant Vision Solar LLC ("Vision Solar") to stop the Defendant from violating the Telephone Consumer Protection Act by making telemarketing calls without consent to consumers who registered their phone numbers on the National Do Not Call Registry ("DNC") and to consumers who have specifically asked the Defendant to stop calling them. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Phillip Neal Sego is a resident of Cambridge, Massachusetts.

2. Defendant Vision Solar is a Pennsylvania limited liability company headquartered in Blackwood, New Jersey. Defendant Vision Solar conducts business throughout this District and the U.S.

## JURISDICTION AND VENUE

3. This Court has Federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant because the Defendant conducts business throughout Massachusetts, and the Defendant's actions were directed towards the Plaintiff who resides in this District.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case was directed to and received by the Plaintiff while residing in this District.

## INTRODUCTION

6. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant

2

barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

8. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

9. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

10. According to online robocall tracking service "YouMail," 4.3 billion robocalls were placed in June 2022 alone, at a rate of 144.3 million calls per day. www.robocallindex.com (last visited July 7, 2022).

11. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

14. Defendant Vision Solar is a renewable energy company that sells solar panels and related installation services to consumers across the U.S.[3]

15. Defendant Vision Solar hires sales representatives to place outbound telemarketing calls to consumers to solicit them to get solar panels installed in their homes.[4]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://visionsolar.com/about-vision-solar-nj/
[4] https://careers-visionsolar.icims.com/jobs/search?ss=1&searchRelation=keyword_all&searchCategory=8748&mobile=false&width=1440&height=500&bga=true&needsRedirect=false&jan1offset=-300&jun1offset=-240

4

16.     Defendant Vision Solar places telemarketing calls to consumers to solicit their solar panel installation products and/or services, including to phone numbers listed on the National Do Not Call list, like in Plaintiff Sego's case.

17.     To make matters worse, Defendant Vision Solar continues to call consumers even after they have explicitly told them to stop calling.

18.     For example, in Plaintiff Sego's case, Defendant Vision Solar placed multiple calls to his DNC registered number, and they continue to call the Plaintiff despite his instructing the Defendant to take his phone number off their calling list.

19.     Several of Defendant Vision Solar's employees have posted reviews online showing that Defendant supplies leads to their employees and directs them to place telemarketing calls to consumers, including consumers whose phone numbers are listed on the National Do Not Call list, and including calls to consumers who have previously requested the Defendant to stop calling, for instance:

> **Ping pong table for breaks, great management, good pay structure, supportive coworkers**
> Training Manager (Current Employee) - Deerfield Beach, FL - January 4, 2022
> If you work hard on the phones, you will make great money. Management really cares about each individual and they constantly work with you to improve.
>
> ✓ **Pros**
> Great pay, company lunches
>
> ✗ **Cons**
> None

[5]

---

[5] https://www.indeed.com/cmp/Vision-Solar-5/reviews?start=60

- **Poorly managed**

  Consultant (Former Employee) - Orlando, FL - December 2, 2020

  Managers keep hot leads for themselves and give cold leads to everyone else. 90% of appointments assigned to you are no shows or fake appointments. if you work there YOU WILL NOT HAVE A LIFE. You better be single and dont have a significant other or family otherwise you will only see them on Sundays.

  ✓ **Pros**
  You get reg pay plus commission

  ✗ **Cons**
  If you have a family, you will not see them much. You will be a slave to this job. [6]

  Former Employee, less than 1 year

  ### Very bad for work life balance

  Aug 19, 2021 - Sales Consultant

  ✗ Recommend    ◯ CEO Approval    ✗ Business Outlook

  **Pros**
  Leads provided but not good
  Training
  Pay
  Free coffee
  They give good leads to their favorite ones

  **Cons**
  No work life balance
  High pressure
  Low turn over
  Bad management
  Favouritism
- Work 6 days a week [7]

---

[6] https://www.indeed.com/cmp/Vision-Solar-5/reviews?start=120
[7] https://www.glassdoor.com/Reviews/Vision-Solar-Reviews-E2481080_P11.htm?filter.iso3Language=eng

6

> Cons
> No transparency
> They lie right to your face
> They tell you that you'll get commission and it's never on your check
> When you ask for a print out or some sort of documentation with your earned commission, they never show you and just bs you until you stop asking
> They basically have another company running the community outreach and Sales team.
> That company is called Solar Xchange
> They just lie a lot and are very unprofessional and uncaring
> They hire family members and friends all of the time and promote from within their friend group
> They run a scam, basically hiring a canvas team to work outdoors for 1-2 months and then disband the entire team, thus funneling workers they want from the canvas team over to the call center at solar xchange
> It's really weird and solar Xchange virtually doesn't exist if you try to find it
> They are only listed at a lead generator company but my boss, Will, owns solar Xchange and was my boss at vision solar
> When the canvas team was disbanded, he transferred several of us to his company as call center representatives
> Where we would be forced to harass possible customers over and over even if they had blocked us or put themselves on a do not call list
> We were essentially just harassing people endlessly, ridiculed and made to stand if we didn't get good numbers It was very degrading and it became a very taxing job position [8]

20. Multiple consumers have posted complaints online regarding unsolicited telemarketing calls they received from Defendant Vision Solar, including complaints from consumers whose phone numbers were listed on the DNC registry and including instances where Defendant kept calling the consumers even after the consumers requested the Defendant to stop calling on their phone numbers, for instance:



> Deb D.
> Tempe, AZ
> 39  20  25
>
> ★☆☆☆☆  10/8/2019
>
> Never asked for solar, never filled anything out. My number is unlisted and unpublished and on the Do Not Call list yet Vision keeps calling. Gave John a Cease and Desist 7/31/2019 and they still call. [9]

---

[8] *Id.*
[9] https://www.yelp.com/biz/vision-solar-blackwood-6?start=10&sort_by=rating_asc

7

- [10]

- [11]

- [12]

---

[10] *Id.*

[11] https://www.trustpilot.com/review/visionsolarllc.com?_ga=2.92179866.1004831328.1657143882-859903258.1657143882

[12] https://www.yelp.com/biz/vision-solar-austin




> **Margaret L.**
> Regency Park Estates, McAllen, TX
> ★☆☆☆☆  3/3/2022
>
> This company cold called my elderly mother-in-law yesterday about solar panel installation. When the representative showed up to the house today, she refused to answer any questions about the company. She refused to provide the website, a brochure or any literature whatsoever regarding this company and its services.
>
> She, not once, but twice tried to force her way into the home so that she could "look at our energy bills." She called her boss, who took the same rude and abrasive tone when asked questions about the company's services. He screamed over the phone and the woman refused to leave until we threatened to call the police.
>
> If this is, in fact, a legitimate company, they are at the very least completely unprofessional and ill-equipped to meet any of your needs.[13]

21. In response to these calls, Plaintiff Sego brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Classes and costs.

### PLAINTIFF SEGO'S ALLEGATIONS

22. Plaintiff Sego is the subscriber and the sole user of the cell phone number ending with xxx-xxx-3054.

23. Plaintiff Sego registered his cell phone number on the DNC on August 16, 2003.

24. Plaintiff's cell phone number is not associated with a business and is used for personal use only.

---

[13] *Id.*

25. Plaintiff Sego has had solar panels installed at his home for the past 8 years and was not looking for any products and/or services related to solar energy, or information related to it.

26. Plaintiff Sego did not request Defendant Vision Solar or any of their agents for information or quotes related to their products and/or services.

27. In June 2022, Plaintiff started receiving unsolicited calls about solar panel system for homes using the phone number 508-409-6468 from Defendant Vision Solar.

28. On June 1, 2022, Plaintiff received a call to his cell phone from the phone number 508-409-6468. Plaintiff answered the call and the salesperson started soliciting Defendant Vision Solar's solar products and/or services to Plaintiff. Plaintiff was annoyed by the unsolicited call and expressed his disinterest in the Defendant's products and/or services. The caller identified his company as Defendant Vision Solar, from New Jersey.

29. On June 6, 2022, at 10:36 AM, Plaintiff received another call to his cell phone from Defendant using the same phone number 508-409-6468. Plaintiff answered the call and a male salesperson was soliciting Defendant's products and/or services to him. Plaintiff informed Defendant's employee that he was not interested in their products and/or services, and instructed Defendant to stop calling his cell phone.

10

30. On June 7, 2022, at 11:41 AM, Plaintiff received another call to his cell phone from Defendant Vision Solar using the same phone number 508-409-6468, despite Plaintiff's previous stop requests to Defendant's agent. Plaintiff answered the call and asked Defendant's employee once again, to stop calling on his cell phone, and informed them that the calls were in violation of law. The employee argued with Plaintiff stating that Plaintiff had contacted them. Plaintiff told the agent that Plaintiff already had solar installed at his home, that he definitely did not contact or make any inquiry from the Defendant. Plaintiff asked Defendant to never call on his cell phone again.

31. On June 9, 2022, at 2:32 PM, Plaintiff received yet another to his cell phone from Defendant using the same phone number 508-409-6468. Plaintiff answered the call and spoke to a female calling on behalf of Defendant Vision Solar. Plaintiff reiterated his stop request. Defendant was insistent and rude in response and said that there was no law which prevented her from calling Plaintiff's cell phone. Plaintiff informed the caller that he'd be taking legal action and the caller laughed in response.

32. On June 21, 2022, at 10:43 AM, Plaintiff received another call to his cell phone from Defendant using the phone number 508-409-6468 and spoke to "Jeff". Plaintiff asked again that Defendant stop calling his cell phone.

33. On calling the phone number 508-409-6468, it is answered by Defendant Vision Solar employees, who solicit Defendant's solar products and/or services to the callers, just as the callers did in Plaintiff Sego's experience.

34. The unauthorized telephone calls that Plaintiff received from and/or on behalf of the Defendant have harmed Plaintiff Sego in the form of annoyance, nuisance, and invasion of privacy, occupation of his phone line and disturbance of the use and enjoyment of his phone, wear and tear on the phone's hardware (including the phone's battery), and consumption of memory on the phone

35. Seeking redress for these injuries, Plaintiff Sego, on behalf of himself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

36. Plaintiff Sego brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Classes:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant, or an agent calling on behalf of the Defendant, called more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason that Defendant called Plaintiff.
>
> **Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant, or an agent calling on behalf of the Defendant, called more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason that Defendant called Plaintiff, (5) including at least once after the person requested that Defendant or its agent to stop calling.

12

37. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant has been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

38. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

39. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Classes include, but are not necessarily limited to the following:

(a) whether Defendant placed multiple calls to Plaintiff and members of the Do Not Call Registry class without first obtaining consent to make the calls;

(b) whether Defendant or their agents placed multiple calls to Plaintiff and members of the Internal Do Not Call Class including at least once after the consumer requesting Defendant or their agents to stop calling;

(c) whether the calls violated the TCPA;

(d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

40. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither the Plaintiff nor his counsel have any interest adverse to the Classes.

41. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes as a whole, and thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes

14

and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to the Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Sego and the Do Not Call Registry Class)**

42. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

43. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

44. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

45. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as the Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

46. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

47. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of

16

statutory damages recoverable by the members of the Do Not Call Registry Class.

## SECOND CLAIM FOR RELIEF
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Sego and the Internal Do Not Call Class)

48. Plaintiff repeats and realleges paragraphs 1 through 41 of this Complaint and incorporates them by reference herein.

49. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a

17

party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

50. Defendant, or an agent calling on behalf of Defendant placed calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendant or its agent to initiate telemarketing calls.

51. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

52. The Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Sego individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b) An award of damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e)   Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Sego requests a jury trial.

DATED this 21st day of July, 2022.

**PHILLIP NEAL SEGO**, individually and on behalf of all others similarly situated,

By: /s/ *Jason R. J. Campbell*
Jason R. J. Campbell, Esq.
Charlestown Law Group
The Schrafft Center Power House
529 Main Street, Suite P200
Charlestown, Massachusetts 02129
(617) 872-8652
jcampbell@charlestownlawgroup.com

*Local counsel for the Plaintiff and the putative Classes*

Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Classes*